FOURNET, Chief Justice.
The plaintiff, Dr. Joseph A. LaNasa, the operator of an automobile house-trailer park in the city of New Orleans known as the Beacon Trailer Park, is appealing from a judgment of the District Court recalling and dismissing at his cost the rule nisi for a preliminary writ of injunction, previously issued against the defendant, New Orleans Public Service, Inc., prohibiting its agents from cutting off the electric current at the trailer park and from in any manner interfering with plaintiff’s use thereof at the said park.
The plaintiff, in the business of furnishing space and utilities for the parking of trailers, secures his electricity from the defendant under a contract which specifically provides: ‘‘Customer agrees not to resell or share with others service sup *551 plied hereunder.” The service is rendered in accordance with defendant’s Schedule LP-3, duly filed with and approved by the City of New Orleans, the regulatory authority, and contains the provision: “This schedule is applicable to the total alternating current electrical requirements of any Customer at one location except an individual family residence or an individual family apartment. * * * Service hereunder shall be taken from a single service through one meter, is for the exclusive use of the Customer, and shall not be resold or shared with others.” Under this Schedule the energy charge is based on a graduated descending scale of 3^ per kwh for the first 500 kwh used, to Viof per kwh for all additional over 22,500 kwh. (All italics ours.)
This trailer park, established in 1944, is equipped with an electrical distribution system which transmits electricity from the defendant’s meter (located within the grounds) to fuse and switch boxes placed in receptacles on poles at the spaces reserved for the parking of each trailer, with provision for connection with the trailer, and it was customary to charge a fixed rate for ground rent plus, an added charge for electricity, varying from $1 to $3 per week, based on the' size of fuses in excess of 10 amperes used by each trailer— 100 kwh- being allowed at no . additional charge to each trailer operating on a 10 ampere fuse. During'the summer of 1951 plaintiff installed some 20 private' meters'; spotted at various locations, in an effort to learn if certain families were consuming an extravagant amount of electricity and thus account for his reduced profit in spite of increased business. A a result of this check he purchased and installed 154 recording meters during the months of August, September and October, 1951, and began charging the tenants on the basis of the electricity consumed by each trailer instead of the flat fee previously charged according to the size of fuse, calculated at 4‡ per kwh for consumption in excess of 100 kwh — there being no charge for the first hundred hours. When a representative of the defendant called at the Park in early November, he noticed that the sub-meters had been installed; the plaintiff was promptly notified that a rate violation existed or was possible, and that the sub-meters must be removed or electricity would be cut off. Plaintiff then brought this suit’ to enjoin the defendant’s threatened action.
Both in oral argument and in brief counsel for plaintiff contends that plaintiff was not reselling electricity, since he made no profit therefrom, but was merely check-metering to arrive at a fair charge with respect to each tenant. He urges the significance-of noting the “vast difference” in meaning between the term checkmetering, and the term submetering, which is said to mean remetering and reselling — it being one of plaintiff’s principal contentions that if any practice is prohibited by the contract and Schedule (which must be construed *553 against the defendant), it is only the practice of remetering and reselling at specific charges.
Counsel also urges a plea of estoppel, based on his contention that the plaintiff has been “sharing” electricity with his tenants since 1944 with no attempt at concealment; that the elaborate distribution system by which the trailers received electricity was visible to everyone entering the park, including defendant’s meter readers, and that, relying on defendant’s acquiescence over a period of seven years, plaintiff expended $3,280 for the meters, the use of which at specific charges is merely a' more equitable method of calculating the share of each trailer; so that the defendant, by its laches and silence, is now es-topped from asserting that the plaintiff may not share electricity without breaching the contract.
It is clear under the facts here presented that the plaintiff was reselling the electricity he received under a contract prohibiting such practices; he first made a charge of $1 to $3 per week, based on the size of the fuses in excess of ten amperes used by each trailer; after installation of the private meters, his charges were based on his own rate schedule in proportion to consumption exceeding 100 kwh; and the absence of intention on his part to make a profit or to compete in the public utilities business (as he insists)' avails him nothing.
His' plea of estoppel is equally without foundation. The fact that the defendant knew of the distribution system fails to signify acquiescence on its part in plaintiff’s practices, since the furnishing of electricity received from the defendant to the several trailers parked within the grounds was neither a sharing nor a reselling of the electricity with others within the meaning of the contract, but was merely the use of the electricity in conducting the plaintiff’s business, as contemplated by the contract and Schedule. The record clearly shows that as soon as the defendant’s agent discovered that meters had been installed within the receptacles housing the fuses and switch boxes, the plaintiff was immediately notified of the contractual violation and was requested to remove the submeters, the defendant offering to install as many meters as would be requested and to open separate accounts for each customer.
The plaintiff’s original complaint that he was being singled out for unwarranted treatment since other trailer park operators in New Orleans were charging for electric current under the same type of installation as plaintiff’s without objection from the defendant — naming Pelican Trailer Park and Avalon Trailer Park— was not mentioned in oral argument and, according to the tenor of his brief, is no longer being urged. In any event, the record shows that inspections were made by the defendant a* these locations, dis *555 closing that the meter installations at one were the property of defendant, each covered by a separate account; and that at the other, where submeters were found to have been installed, it was agreed that these would be promptly removed.
Counsel for plaintiff has also argued that in any event he has the right to retain and use his meters for “remetering or checkmetering or for any other purpose so long as no specific charge based on consumption is made,” so that plaintiff is entitled to the injunction “subject only to the modification' that no' specific charge based upon consumption shall be made.” In supplemental brief counsel recognizes that a question has been raised as to whether or not this issue is properly before the Court, and contends that “even if the plaintiff-appellant did not specifically pray for this right, nevertheless under the prayer for general relief, the Court has the right to render such judgment as the pleadings and the evidence may justify and/or as would be given in a new suit, to avoid circuity of action.” (Emphasis ours.)
A mere reading of the petition affirmatively discloses that the plaintiff is seeking one thing only, and that is- to enjoin the defendant from cutting off his electrical service so he may be permitted to continue business under his present set-up of using the individual meter system and charging for the amount of electricity consumed. The entire evidence, including plaintiff’s affidavit, clearly shows that the sole purpose and use of the meters is to gauge the amount of electricity each trailer uses so that plaintiff can charge the customers accordingly. In other words, according to the record the plaintiff wants to continue his method of doing business— charging a certain rate for the parking of the trailer, plus an additional charge for and in accordance with the amount of electricity consumed while so parked. Under these circumstances we do not feel that the plaintiff is entitled to the relief, sought.
For the reasons assigned, the judgment appealed from is affirmed.